UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

Present: The Honorable    James V. Selna

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:**    (IN CHAMBERS)
Order Granting Defendant EWI's Motion for Summary Judgment or in the Alternative, Summary Adjudication of Issues (Fld 11-30-09)

Defendant EWI Worldwide ("EWI") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the sole remaining claim against it, for trade secret misappropriation in violation of the California Uniform Trade Secret Act ("UTSA"), California Civil Code sections 3426.1 et seq. Plaintiff Premier Displays & Exhibits, Inc. ("Premier") opposes.

I.    BACKGROUND

This case arises from the alleged misappropriation of Premier's trade secrets by defendants EWI and David Cogswell ("Cogswell"), a former employee of Premier. Both EWI and Premier are companies that provide design and fabrication of displays and exhibits for museums, theme parks, and other businesses. (Pl's. Statement of Genuine Controverted Issues ("GCI") ¶¶ 1-2.) In March, 2008, EWI was invited to bid on a project by Walt Disney Imagineering ("WDI"), the creative development arm of the Walt Disney Company. (Id. ¶¶ 3, 5.) The project, referred to as the "Blue Sky Cellar," involved transforming an existing exhibit at Disney's California Adventure theme park from a winery-related theme into a workspace appearing to be used by WDI "Imagineers." (Id. ¶¶ 6-7.) Premier was not one of the three companies invited by WDI to bid on the project. (Id. ¶ 9-10.)

In the process of preparing its bid, EWI asked Cogswell to prepare several hand-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-354 JVS (ANx)                                    Date   December 23, 2009

Title   Premier Displays & Exhibits v. David Cogswell, et al.

drawn sketches of EWI's proposed Blue Sky Cellar.[1]  (Id. ¶ 15.)  At the time, Cogswell was an employee of Premier.  (Id. ¶ 11.)  Cogswell created two sketches for EWI's bid, the "Preliminary Sketch" and the "Final Sketch."[2]  (Id. ¶ 12.)  These sketches were based, at least in part, on computer-aided design ("CAD") drawings developed by EWI and WDI.[3]  (See id. ¶¶ 20, 27.)  However, Premier contends that the CAD drawings do not contain the same level of detail as Cogswell's sketches.  (Id.)  Only the Final Sketch was used in EWI's final bid to WDI.  (Id. ¶ 16.)

EWI won the bid to design and construct the Blue Sky Cellar.  (Id. ¶ 23.)  Meanwhile, Cogswell was fired by Premier when it discovered that he had created the sketches for EWI.  (Id. ¶ 4.)

II.     **LEGAL STANDARD**

Summary judgment is appropriate where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary adjudication, or partial summary judgment "upon all or any part of a claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim.  Fed. R. Civ. P. 56(b).

The initial burden is on the moving party to demonstrate an absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[1] The parties dispute exactly who invited Cogswell to prepare the sketches.  EWI contends that Tracy Cogswell, David Cogswell's wife and an EWI employee, asked Cogswell to prepare the sketches, but Premier asserts that EWI management was involved.  (Id. ¶ 15.)

[2] There is some dispute as to whether the sketches were created while Cogswell was at work at Premier or whether he created them on his own time away from his office.  (Id. ¶ 14.)

[3] As discussed below, Premier contested this previously undisputed fact for the first time at oral argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

party." Id. at 248. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

III.   DISCUSSION

Premier's sole claim against EWI is trade secret misappropriation under the UTSA. It alleges that Cogswell's sketches are trade secrets which were misappropriated by EWI when it requested that Cogswell create the sketches, knowing that he was an employee of Premier. On this motion for summary judgment, EWI argues the following: (1) Cogswell's sketches are not trade secrets within the meaning of California Civil Code section 3426.1; (2) the sketches are not owned by Premier; (3) Premier's claim is preempted by the Copyright Act, pursuant to 17 U.S.C. § 301; and (4) Premier cannot demonstrate that it is entitled to any monetary relief. The Court will consider each argument in turn.

   A.   Are the Sketches Trade Secrets?

Under California Civil Code section 3426.1(d), a trade secret is:

   information, including a formula, pattern, compilation, program, device,
   method, technique, or process, that: (1) Derives independent economic
   value, actual or potential, from not being generally known to the public or to
   other persons who can obtain economic value from its disclosure or use; and
   (2) Is the subject of efforts that are reasonable under the circumstances to
   maintain its secrecy.

Id. Whether something qualifies as a trade secret is ordinarily a question of fact. San Jose Constr., Inc. v. S.B.C.C., Inc., 155 Cal. App. 4th 1528, 1537 (Ct. App. 2007).

EWI argues that Cogswell's sketches cannot be trade secrets under the UTSA because they are just artistic renderings of EWI and WDI's ideas. This argument presents two separate issues: (1) whether Cogswell's sketches convey useful information, and (2)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 09-354 JVS (ANx)                                Date  December 23, 2009

Title  Premier Displays & Exhibits v. David Cogswell, et al.

whether any information embodied in the sketches was previously known to EWI and WDI, i.e. whether the information was "secret."[4]

        1.      The Information Conveyed by the Sketch

EWI contends that Cogswell's sketches cannot be trade secrets because they are merely "artistic expressions" and "work[s] of art" that do not "convey useful information or some kind of methodology." (Mot. Br. 13.) As they note, "trade secret law protects the idea, not the form of expression." Designs Art v. Nat'l Football League Props., Inc., 57 U.S.P.Q. 2d 1716, 1719 (S.D. Cal. 2000); accord Balboa Ins. Co. v. Trans Global Equities, 218 Cal. App. 3d 1327, 1349 (Ct. App. 1990) ("Trade secret law protects content irrespective of form of expression . . . ." (citation omitted)).

It is relatively well established that drawings can be trade secrets. See Vacco Indus., Inc. v. Van Den Berg, 5 Cal. App. 4th 34, 41-42, 50 (Ct. App. 1992) (finding a protectable trade secret in plaintiff's "engineering notes, [and] initial, preliminary and final drawings"); Forro Precision, Inc. v. Int'l Bus. Mach. Corp., 673 F.2d 1045, 1057 (9th Cir. 1982) (finding a protectable trade secret "in the form of engineering drawings and blue prints"). EWI admits as much. (Mot. Br. 12.) However, it argues that Vacco and Forro are distinguishable because in those cases, the drawings were blueprints or engineering sketches, accompanied by qualitative data, specifications, or engineering notes. EWI argues that Cogswell's sketches contain no such similar information. Neither the preliminary nor the final sketch contain any specific measurements or specifications. (T. Cogswell Decl., Ex. C, D.)

The Court does not find EWI's argument persuasive. The mere fact that Cogswell's sketches lack specific measurements or qualitative engineering data does not mean that they do not convey any useful information. The sketches depict the look and feel of the proposed final project. Such information could be used as a starting point to draft the necessary blueprints and engineering drawings, and as a template to make sure

---

[4] EWI does not argue that Premier failed to make reasonable efforts to maintain the secrecy of its alleged secret information. (Reply Br. 14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

that the final project looks like the proposal.[5] To hold otherwise would render any architectural drawing unprotectable under trade secret law if it did not contain specific measurements. Such drawings contain very valuable information—namely, what the final project will look like.

Putting aside for the moment exactly whose ideas the sketches depict, it is clear that they convey the requisite information to be a trade secret.

      2.      The Secrecy of the Information

EWI also contends that the ideas conveyed in the sketches cannot be trade secrets because they were not secret as to EWI. Indeed, EWI argues, the ideas cannot be Premier's secret because they were created by EWI and WDI.

Under the UTSA, information may be a trade secret only if it "is valuable because it is unknown to others . . . ." DVD Copy Control Ass'n Inc. v. Bunner, 116 Cal. App. 4th 241, 251 (Ct. App. 2004). Thus, "in order to qualify as a trade secret, the information 'must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.'" Id. (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475 (1974)). Whether information is secret is "a relative concept and requires a fact-intensive analysis." Id. The question is "whether the information has retained its value to the creator in spite [any disclosure]." Id. (emphasis added).

EWI contends that the ideas conveyed in Cogswell's sketches cannot be Premier's trade secrets because they were created by EWI, and thus not secret. EWI argues that Cogswell's sketches are based, in large part, on CAD drawings and information provided to him by EWI. Cogswell testified in a deposition that his sketch "basically . . . was a sketch of an existing design that EWI had. . . . The design had already been completed with regards to the layout of the exhibit. I drew over the top of an existing computer render." (Collins Decl., Ex. D at 11:13-15, 13:1-3.) He testified that the purpose of the sketch "was to just have a hand drawing rather than just a computer rendering." (Id., Ex.

---

    [5] The parties spend considerable time disputing whether the drawings were actually used in preparing the engineering drawings. This is irrelevant. The relevant question is whether the drawing could have been used—in other words, whether the drawing contained useful information, not whether that information was used.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

D at 15:23-24.) Cogswell's wife Tracy testifies that she asked him to "prepare a hand drawn sketch by tracing over one of the images, and [she] gave him direction on how the sketch should be prepared." (T. Cogswell Decl. ¶ 6.) She testifies that "[a]ll of the concepts and ideas expressed in the Preliminary Sketch and the Final Sketch . . . were well known to me and the other members of the EWI creative team prior to my husband's creation of [the sketches]." (Id. ¶ 11.)

Indeed, EWI's CAD drawings are almost identical to Cogswell's sketches. (See id., Exs. B, C, D.) One of the CAD drawings sets out the design of the "Imagineer Workstation" and the other two establish the layout of the room, including the placement of the workstations. (Id., Ex. B.) Cogswell's sketches are drawn from the exact same perspective as the room layout renderings, appear to have been traced from those renderings, and appear to have simply integrated the rendered Imagineer Workstations onto the room layout renderings. (See id., Exs. B, C, D.)

In its Opposition Brief, Premier did not present any evidence or argument to rebut EWI's considerable evidence that the Cogswell sketches were almost entirely based on EWI's ideas. However, for the first time at oral argument, Premier argued that there were inconsistencies in David and Tracy Cogswell's testimony that raised a triable issue of fact as to whether the CAD drawings were created first or whether they were copied from Cogswell's sketches, rather than vice versa. Premier noted that, according to Tracy Cogswell, the CAD drawings "on which David [Cogswell] based his sketch" were created and emailed to Tracy on March 18 and 19, 2008. (Knox Decl., Case Ex. 21.) It is undisputed that David Cogswell emailed the Preliminary Sketch to his wife and Carter Lee, another EWI employee, on March 21, 2008. (Id.; Amato Decl., Ex. 1.)

The inconsistency, according to Premier, is that Cogswell allegedly testified in his deposition that he created the sketches on March 15, 2008, which would be prior to him receiving the CAD drawings on March 18 and 19. Cogswell's testimony is as follows, in relevant part:

Q. What did you discuss with your wife?

A. My wife asked me if I was – would I like to try and do a drawing over the top of an existing computer rendering just for the fun of it on a Saturday morning.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 09-354 JVS (ANx)                              Date  December 23, 2009

Title     Premier Displays & Exhibits v. David Cogswell, et al.

>   Q. Did your wife tell you anything else about the computer – computer rendering that Saturday morning, other than inquiring whether you would like to do a drawing over the top of it?
>
>   A. I don't recall.
>
>   . . .
>
>   Q. What was the date of the Saturday morning that your wife discussed this computer rendering with you?
>
>   A. I don't recall.
>
>   Q. Would it be fair to say that it was sometime prior to your transmission of your own hand drawings to Carter Lee.
>
>   A. It would be fair to say that, yes.

(Collins Decl., Ex. D at 15:10-19, 17:6-13.)  The Saturday prior to March 21, 2008, the date the Preliminary Sketch was sent to Carter Lee and Tracy Cogswell, is March 15, 2008.  However, contrary to Premier's argument, nothing in Cogswell's testimony indicates that he <u>created</u> the sketch on the Saturday morning of March 15, as opposed to merely <u>discussing</u> it with his wife.  Premier's argument would require the inference that, because he discussed the sketch with his wife on the Saturday morning, he must have created it on the same day.  That is not a reasonable inference based on the testimony.

     Moreover, if the Court accepts Premier's argument, it is presented with a logical inconsistency.  The Preliminary Sketch and the CAD drawings are drawn from the exact same perspective, depict the same layout and the same Imagineer Workstations.  They could not have been created independently; one must have been copied from the other.  However, it is undisputed that Cogswell did not send his Preliminary Sketch to EWI until March 21, <u>after</u> EWI emailed the CAD drawings to Tracy Cogswell on March 18 and 19.  Thus, it would have been impossible for EWI to have copied Cogswell's sketches.  The only logical conclusion is that Cogswell copied the CAD drawings sometime between March 18 and 19, when he received the CAD drawings, and March 21, when he sent them to EWI.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 09-354 JVS (ANx)                              Date   December 23, 2009

Title   Premier Displays & Exhibits v. David Cogswell, et al.

    The Court notes that Cogswell's deposition testimony is the <u>only</u> evidence Premier has presented to support its argument that the CAD drawings were copied from Cogswell's sketches. And, in that deposition, Cogswell says nothing about when he created the drawings, absent a monumental inferential leap. Meanwhile, EWI has presented direct deposition testimony and emails clearly supporting that Cogswell copied the CAD drawings. The Court finds that no triable issue of fact exists on this issue.

    Therefore, the ideas contained in Cogswell's sketches, copied from EWI's drawings, cannot be Premier's secret. Premier cannot get a trade secret in someone else's idea, and thereby prevent that person from "misappropriating" the idea, simply because one of its employees illustrated the idea, however wrongful that employee's actions were in doing so.[6] Because the main ideas conveyed in Cogswell's sketches were not secret as to EWI prior to the alleged misappropriation, it cannot be liable for trade secret misappropriation.[7]

    Premier also focuses on several minute additions present in Cogswell's sketches that were not in EWI's CAD drawings: (1) several pieces of artwork pinned on the walls around the Workstations, and (2) a barrel stuffed with rolls of blueprints next to one of the Workstations. (Opp'n Br. 19; GCI ¶¶ 20, 90.)

    The Court finds that the use of artwork on the walls in Cogswell's sketches cannot be a trade secret. Ideas which are a matter of common public knowledge or commonly known in the relevant industry cannot be a trade secret. <u>Self Directed Placement Corp. v. Control Data Corp.</u>, 908 F.2d 462, 465-66 (9th Cir. 1990). In <u>Self Directed</u>, the Ninth Circuit upheld a district court's determination on summary judgment that certain techniques used in an employment counseling program, such as review and critique of thank you notes and dress rehearsals for job interviews, could not be trade secrets because they were a matter of common knowledge. <u>Id.</u> The district court noted that "[i]t would be absurd to permit [the plaintiff] to appropriate as his own 'secrets' common

---

[6] The Court also notes that it is nonsensical to speak of "misappropriation" of one's own idea. EWI could not have misappropriated the very ideas it came up with.

[7] As previously noted, Premier cannot claim a trade secret in the sketches as a form of expression. "Trade secret law protects content irrespective of form of expression . . . ." <u>Balboa Ins.</u>, 218 Cal. App. 3d at 1349.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

pedagogical and job search techniques which would be used in any job placement course." Id.; accord Design Arts, 57 U.S.P.Q. 2d at 1719 ("[T]he idea of a tiger for a logo for the Cincinnati Bengals cannot be a trade secret because the idea of using the subject of a corporate name as a logo for that entity is generally known."). Here, the idea of pinning artwork to the walls in the Blue Sky Cellar cannot be considered Premier's "secret" because such a design element is at least a matter of common knowledge and undoubtedly an idea familiar to those in the business of designing and decorating spaces. Accordingly, the idea of pinning artwork to the walls cannot form the basis of Premier's trade secret claim.[8]

However, the same cannot be said of the barrel full of blueprints. The idea is not a common design element like artwork on walls. The fact that the element was not present in EWI's CAD drawings but was present in Cogswell's sketches raises the reasonable inference that it was Cogswell's idea. EWI has presented no evidence that the barrel idea was known to EWI prior to the alleged misappropriation. And, assuming that Cogswell's creations belong to Premier, a jury could reasonably conclude that the barrel idea was Premier's "secret," and, therefore, protectable as a trade secret. Accordingly, there exists a disputed issue of material fact as to whether the barrel idea is Premier's trade secret. However, the Court finds, as a matter of law, that none of the other ideas conveyed in Cogswell's sketches are Premier's trade secrets.

    B.    <u>Is the Trade Secret Owned by Premier?</u>

EWI contends that, even if a protectable idea was embodied in Cogswell's sketches, Premier does not own those ideas. Premier asserts ownership of the alleged trade secret under a variety of arguments. The Court will consider each in turn.

        1.    California Labor Code section 2860

---

[8] At oral argument, Premier also pointed out other details present in Cogswell's sketches that were not in the CAD drawings, including: handles on the doors, chairs at the Workstations, differences in the shape of the lighting fixtures, the hoop bands on the Workstation barrels, figures standing in the background, boxes on the floor, and tools and papers in the Workstations. These, like the artwork on the wall, are merely common design elements added to EWI's CAD drawings; like the artwork on the wall, they are not protectable trade secrets.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

Premier asserts that it owns the ideas conceived by Cogswell under California Labor Code section 2860, which states:

> Everything which an employee <u>acquires</u> by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment.

<u>Id.</u> (emphasis added).

The plain language of the statute applies only to things an employee "acquires" by virtue of employment, not to things "created" by an employee. <u>Williams v. Weisser</u>, 273 Cal. App. 2d 726, 733 (Ct. App. 1969) ("[Section 2860] speaks of things which the employee 'acquires,' not matters which he creates."). In <u>Williams</u>, the court rejected the argument that UCLA owned the lecture notes created by one of its professors by virtue of Section 2860. <u>Id.</u> at 729-30, 733-34. The court found the statute inapplicable because the professor had "created" the notes rather than "acquired" them. <u>Id.</u> at 733-34.

Premier attempts to distinguish <u>Williams</u> by arguing that Cogswell, unlike the UCLA professor, owed fiduciary duties to his employer. Premier's argument is as follows:

> once Cogswell 'created' the hand-drawn sketches for use by a competitor, they were both equitably, and by written agreement . . . instantaneously and automatically [] Premier's property. At that point, in order for Cogswell to have physically transferred and conveyed his employer's property to competitor EWI . . . , he inescapably had to have 'acquired' that employer property . . . by virtue of his management employment with Premier.

(Opp'n Br. 15.) Premier is arguing that Cogswell "acquired" the sketches under Section 2860 because they were <u>already</u> Premier property under some other theory. This argument is nonsensical. Whether Cogswell was a fiduciary or not, Section 2860 simply does not apply. Cogswell created the sketches rather than acquired them.

   2.  The Premier Employee Orientation Handbook

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

Premier argues that it owns Cogswell's creations due to rules set forth in its Employee Orientation Handbook, to which Cogswell agreed. Premier identifies several provisions under the written agreement which it contends give it ownership of Cogswell's creations:

- "You may engage in work outside your regular work at the Company, provided this work does not detract from your job performance, is not harmful to the Company's best interests, and does not present a current or potential future conflict of interest with your employment here." (Knox Decl., Case Ex. 7 at 6.)

- "One of the Company's greatest assets is 'know-how.' It is this specialized knowledge and experience which helps Premier Displays and Exhibits to successfully compete in the market place and thus provide security and growth for our Company. To help preserve this competitive advantage, you should be careful about what you say to those not employed by the Company. Information on the Company's production methods, production rates, and new product ideas would be very helpful to any competitor and not in our best interests. Remember that loose and idle talk can harm the Company and our future success." (Id. at 1 (emphasis in original.)

- "Employees who may work for Company competitors or subcontractors must notify management in advance in order to prevent possible conflicts of interest." (Id. at 6.)

- "Everything on this property with the exception of employee's personal property and client's property, is Company property and must be maintained according to Company rules and regulations . . . and must be safeguarded against . . . loss. . . . No Company property may be removed from the premises without prior approval of a Manager." (Id. at 26.)

None of the above quoted provisions in the Handbook establishes that ideas created by an employee are Premier property. The clause that "[e]verything on this property . . . is Company property," cannot mean that anything brought onto or created on the Premier

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 09-354 JVS (ANx)                                   Date   December 23, 2009

Title     Premier Displays & Exhibits v. David Cogswell, et al.

premises becomes Premier property simply based on location.[9]  And the Court can find no other provision in the Handbook establishing such a contractual ownership right for Premier.  (See generally id.)  In its Rule 30(b)(6) deposition, Premier failed to identify any provision in the Handbook establishing a right to Cogswell's creative ideas.  (Collins Decl., Ex. A at 55:25-57:22, 67:25-79:10, 90:9-92:6.)

While Cogswell may have breached one of the cited provisions of the Handbook,[10] this is not a breach of contract suit.  This a trade secret misappropriation suit and the question here is whether Premier has a contractual right to claim ownership of ideas created by Cogswell during his employment.  Nothing in the contract establishes that right.

In a declaration by Stephen Amato ("Amato"), a co-founder and owner of Premier, and Premier's Rule 30(b)(6) representative, Premier asserts that it has a claim of ownership under a policy not mentioned in the Handbook or in any other written document, as follows:

> [I]t was also Premier policy that any work product of any kind created by Premier's employees (including by Mr. Cogswell), whether on site or at home, for any third parties in the same lines of work as Premier, were considered Premier's property.  Mr. Cogswell had been informed of this policy on several occasions during regular meetings prior to March, 2008, where the topics of possible misappropriation of Premier's work product by a potential competitor were discussed. Prior to March, 2008, Mr. Cogswell acknowledged this policy of Premier, which policy Mr. Cogswell himself actually relied upon in several e-mails and letters he sent to third parties, whom he had suspected had obtained and used Premier's work product. I also personally reminded Mr. Cogswell of these policies at Premier on numerous occasions, including when he was hired, when he was thereafter promoted to Account Manager, and during a number of other occasions prior

---

[9] Interpretation of a contract is proper on summary judgment if the meaning is unambiguous. Miller v. Glenn Miller Prods, Inc., 454 F.3d 975, 934 (9th Cir. 2006).

[10] The Court expresses no opinion on whether Cogswell's conduct in fact constitutes a breach his employment agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
|---|---|---|---|

| Title | Premier Displays & Exhibits v. David Cogswell, et al. |
|---|---|

> to March, 2008, during which we discussed Mr. Cogswell's relations with Premier's clients and specifically during discussions we had compensation/bonus issues. On each of these occasions, Mr. Cogswell personally assured me that understood these duties and responsibilities.

(Amato Decl. ¶ 19.) Premier did not disclose this unwritten policy in discovery. In fact, it directly contradicts its earlier assertions in discovery. Amato himself testified on November 19, 2009, during the Rule 30(b)(6) deposition, that Premier was relying only on California Labor Code section 2860 and the Employee Handbook for its ownership claims:

> Q. Premier relies on that position [that the sketches are Premier's property], based on information here, on two separate grounds. One, that Labor Code section 2860 applies; right?
>
> A. (The witness nods.)
>
> Q. [...] And the second portion is under the Employee Handbook. So would you agree that you are stating here that Premier has two separate bases in which to claim title, ownership to the sketches: A statute 2860 and the Employee Handbook; fair?
>
> A. Yes.

(Collins Decl., Ex. A at 55:12-24.) In addition, in its response to EWI's interrogatories, Premier states that "[t]he sketches Mr Cogswell created was [sic] Premier's property under Lac.C. § 2860 and under the Employee Handbook."[11] (Id., Ex. F at 4:23-24.)

"[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir.

---

[11] The statement was in response to Interrogatory Number 1, but was incorporated into responses 3 through 16, including Premier's response to Interrogatory No. 3, which requests "ALL FACTS supporting YOUR contention . . . that . . . Defendant Cogswell has misappropriated certain trade secrets . . . from [Premier]". (Id., Ex. F.) The answer to this interrogatory would have to include the facts underlying Premier's claim of trade secret ownership.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

2009) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). In addition, where a party introduces a new affidavit or declaration that contradicts its prior Rule 30(b)(6) testimony on a motion for summary judgment, that contradictory evidence should be excluded, absent some "reasonable explanation" for the discrepancy. Hyde v. Stanley Tools, 107 F. Supp. 2d 992, 993 (E.D. La. 2000); Rainey v. Am. Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 95-96 (D.D.C. 1998). However, a declaration or affidavit should not be disregarded where it is "introduced to explain portions of earlier deposition testimony," or if the inconsistency is not clear and unambiguous. Van Asdale, 577 F.3d at 998-99 (quoting Kennedy, 952 F.2d at 266-67).

Premier argues that Amato did in fact identify the unwritten policy in the Rule 30(b)(6) deposition. (Pl's. Resp. to Def's. Objections at 2-4.) Specifically, Premier cites Amato's explanations of how the Handbook establishes Premier's ownership rights.[12]

---

[12] The testimony Premier identifies is as follows:

Q. Is it your contention that the contract that [Cogswell] signed with Premier has a provision somewhere in it that says "If you draw" – "If you create a rendering," to use your words, "while you're employed with us, it's ours, we own it" – that's your position; right?

A. Yes.

. . .

Q. Does this statement, what I just read under company property of your Employee Handbook, does that say, in your mind, Mr. or Ms. Employee, if you create a sketch at home it's our property?

A. Yes.

Q. Now, explain to me how you interpret this statement that we just read out of the Employee Handbook to stand for that proposition.

A. It's simple. He's an employee.

Q. Right.

A. Works for the company.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 09-354 JVS (ANx)                                Date  December 23, 2009

Title  Premier Displays & Exhibits v. David Cogswell, et al.

However, all of these statements relate to the Amato's

---

> Q. Right.
>
> A. If he does a sketch, it's my sketch.
>
> . . .
>
> Q. ... How does Mr. Cogswell's sketches become your property by referencing this paragraph? What is it about this paragraph that supports the notion that . . . renderings that he created . . . becomes your property? How does that happen, using this contract?
>
> A. He is an officer of my company, he manages people, and he has a duty, and if he doesn't abide by that duty, and I have all my employees doing sketches at home and acknowledge them with competitors, well then I'm out of business.
>
> . . .
>
> Q. Mr. Amato, you understand that just because an employee violates some provision of their employment agreement doesn't mean that you like then own their property. You understand that, don't you?
>
> [Objection omitted.]
>
> A. I believe that as a manager of the company, he owes responsibility to the company and not to work for a competitor while he's working for me.
>
> Q. And I believe you believe that that's supported in the contract, his employment contract?
>
> A. Yes.
>
> Q. ... How does that sketch, the sketches, become your property? . . . I would rather you just point me to where in the contract it says sketches that you create, Ms. Employee or Mr. Employee, is Premier's property.
>
> [Objection omitted.]
>
> A. Sketches produced by a manager in my company for a competitor belong to Premier.

(Supplemental Knox Decl., Ex. B at 65:14-24, 70:8-20, 89:22-90:8, 109:18-111:8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 09-354 JVS (ANx)     Date December 23, 2009

Title     Premier Displays & Exhibits v. David Cogswell, et al.

interpretation of the Handbook. Premier has identified nothing in this deposition, or any of its discovery responses, where Amato identifies a formal, unwritten policy "that any work product of any kind created by Premier's employees (including by Mr. Cogswell), whether on site or at home, for any third parties in the same lines of work as Premier, were considered Premier's property," or that Cogswell was repeatedly reminded of and agreed to the policy. (Amato Decl. ¶ 19.)

At oral argument, Premier contended that Amato's declaration was not inconsistent because EWI never clearly asked him if he had any other theories of ownership. While the Court does not agree with Premier's interpretation of the deposition and finds that EWI clearly attempted to elicit Amato's ownership theories, the Court also notes that Premier's counsel was asked for all of Premier's theories of ownership and did not mention the unwritten policy:

> Q. . . . [Y]ou've identified the sketches as being your property under two theories, [Cal. Labor Code section] 2860 and this contract.
>
> A. In addition to that, there's a case law . . . that sets forth the fiduciary duties of a manager, okay, not to disclose or misappropriate trade secrets, meaning, translation, not to create property and give it to the competitor.

(Collins Decl., Ex. A at 116:22-117:4.) Premier's counsel does not identify here, or anywhere else, any unwritten company policy. Premier never revealed the unwritten policy in responses to interrogatories, in the Rule 30(b)(6) deposition of Amato, or in direct questioning of Premier's counsel. If Premier actually had such a formal policy, to which Cogswell agreed, the Court finds it inconceivable that Premier would not have presented evidence of the policy in discovery. The Court is forced to conclude that Amato's declaration, which raises this unwritten policy for the first time in opposition to summary judgment, and which conflicts interrogatory responses, Amato's deposition testimony, and Premier's counsel's deposition testimony, is a sham affidavit intended to avoid summary judgment.[13]

---

[13] Premier also argues that its Third Amended Complaint ("TAC"), which the Court granted leave to file last week, contains a factual allegation of such a policy in Paragraph 54.1. The Court can identify no such allegation. (See TAC ¶ 54.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
|---|---|---|---|
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

Because Amato's declaration with respect to the unwritten ownership policy contradicts his earlier testimony in the Rule 30(b)(6) deposition, Premier's interrogatory responses, and Premier's counsel's deposition testimony, and was not disclosed during discovery, the Court disregards the declaration. Premier has raised no triable issue of fact as to any right of ownership in the Handbook or under any unwritten company policy.

       3.     Corporate Opportunity Doctrine

Finally, Premier asserts that it has ownership over the Cogswell's ideas under the corporate opportunity doctrine.[14] Under this doctrine, an officer or director of a corporation may not "seize for himself to the detriment of his company business opportunities in the company's line of activities which the company has an interest and prior claim to obtain . . . ." Industrial Indem. Co. v. Golden State Co., 117 Cal. App. 2d 519, 534 (Ct. App. 1953). The remedy for a violation of this fiduciary duty is that "the corporation may claim for itself all benefits so obtained by him." Id.

Premier's theory is that Cogswell's sketches and the Blue Sky Cellar project were business opportunities usurped by Cogswell and EWI, and because Cogswell did not present the opportunity to Premier, Premier is entitled to a constructive trust on the sketches and the profits of the Blue Sky Cellar project. Premier's theory is deficient on several grounds. First, this is a trade secret misappropriation case, not a breach of fiduciary duty suit. Premier's allegations of breach of fiduciary duty under the corporate opportunity doctrine are simply irrelevant to the case at hand. Premier has not pled such a cause of action and the corporate opportunity doctrine is simply irrelevant to the ownership of a trade secret.

Second, the Blue Sky Cellar project cannot possibly be the subject of a Premier

---

In addition, at oral argument, Premier noted that the unwritten policy had been identified in supplemental interrogatory responses served on EWI. These response, however, were served several days <u>after</u> Premier's Opposition Brief, with the attached declaration, was filed. Premier cannot avoid the sham affidavit rule by serving supplemental interrogatory responses <u>after</u> the sham affidavit is filed.

[14] The Court notes that this theory of ownership was also not raised in Premier's interrogatory responses. However, unlike Amato's declaration regarding the unwritten policy, Premier's counsel appears to have identified this theory at the Rule 30(b)(6) deposition. (See Collins Decl., Ex. A at 115:22-117:8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

corporate opportunity claim. It is undisputed that neither Premier nor Cogswell were ever invited to bid on the project. (GCI ¶¶ 9-10.) Because Cogswell never had the business opportunity, he could not have usurped it from Premier.

The only opportunity that Cogswell had was to create a couple sketches for EWI. This was the only opportunity he could have usurped from Premier. At best, Premier could recover the benefit Cogswell received for drawing the sketches, i.e. any payment he received from EWI. Under the corporate opportunity doctrine, Premier's remedy is to receive the benefit of the bargain. Industrial Indem., 117 Cal. App. 2d at 534. Premier has cited no authority in support of their contention that it can receive ownership of the alleged trade secret under this doctrine.

Thus, Premier has shown no basis for its assertion of ownership over the lone protectable idea that Cogswell may have come up with, the barrel full of blueprints. Because it cannot claim ownership, it has no claim for misappropriation. Accordingly, EWI is entitled to summary judgment.[15]

    C.    Premier Cannot Demonstrate Monetary Damages

The Court finds that EWI is entitled to summary adjudication on the separate ground that Premier cannot, as a matter of law, demonstrate damages. The bulk of the ideas contained in the Cogswell sketch cannot be Premier's trade secrets because they were originated by EWI or because they are matters of common knowledge. The only potentially protectable idea is the "blueprint barrel" placed next to one of the Imagineer Workstations, an idea potentially originated by Cogswell, as discussed above.

Pursuant to stipulation, the only monetary remedy that Premier seeks is unjust enrichment. (GCI ¶ 38.) Under California Civil Code section 3426.3(a), a plaintiff "may recover for the unjust enrichment caused by [trade secret] misappropriation . . . ." In California, cause-in-fact determinations are made under the "substantial factor" test: whether the misconduct was a substantial factor in bringing about the harm. Mitchell v. Gonzales, 54 Cal. 3d 1041, 1044, 1054 (1991). "[C]ausation . . . is ordinarily a question of fact which cannot be resolved by summary judgment. The issue of causation may be

---

[15] Because the Court finds that EWI is entitled to summary judgment on these grounds, the Court need not reach the question of whether Premier's claim is preempted by the Copyright Act.

Case 8:09-cv-00354-JVS-AN   Document 141   Filed 12/23/09   Page 19 of 20   Page ID
#:2637

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
|---|---|---|---|

| Title | Premier Displays & Exhibits v. David Cogswell, et al. |
|---|---|

decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." Ambriz v. Kelegian, 146 Cal. App. 4th 1519, 1531-32 (Ct. App. 2007).

Even assuming that EWI misappropriated the "blueprint barrel" idea, no reasonable jury could find that EWI was unjustly enriched by the idea. Premier's theory is that EWI's use of Cogswell's sketch was a substantial factor in winning the bid on the Blue Sky Cellar project. However, Premier does not have a trade secret in the sketch; it only potentially has a trade secret in the "blueprint barrel" idea. EWI's bid presentation to WDI contains fifteen pages of illustrations, computer renderings, and designs. (T. Cogswell, Ex. E.) The "blueprint barrel" appears on only one page, as a minor element in the Cogswell Final Sketch. (Id.) No juror could reasonably conclude that the "blueprint barrel" was a substantial factor in EWI winning the bid. Put another way, no juror could reasonably conclude that EWI would have lost the bid had the "blueprint barrel" been omitted from the Cogswell Final Sketch.

Premier presents a raft of circumstantial evidence that the Final Sketch was a substantial factor in EWI's win. It notes that the sketch was the only hand-drawn image in the bid proposal (id.), that it was identical to the final renderings of the Blue Sky Project, which included the "blueprint barrel," released by Disney in a press release, (Williams Decl. at 000015, 000027), that an EWI manager identified all the drawings in the bid proposal to be "necessary," and relied upon to "win the bid," (Knox Decl., Ex. 3 at 215:13-216:15), that the sketch, along with the entire proposal, became part of the final contract deliverables, (id., Case Ex. 22), that the WDI judges made positive comments about the bid, (id., Case Ex. 68), and that the Cogswell sketch was used in the Disney press release on the Blue Sky Cellar Project, (Williams Decl. at 000015).

While these facts may show that the Final Sketch was important to the EWI bid, they do not raise a reasonable inference that the "blueprint barrel" itself was important or a substantial factor in the bid. Nothing in Premier's recitation of the facts demonstrates that the barrel was ever singled out for praise or as a key element of EWI's proposal.

The Court finds that "there is no room for a reasonable difference of opinion" on whether the "blueprint barrel" was a substantial factor in EWI's winning the Blue Sky Cellar bid. See Ambriz, 146 Cal. App. 4th at 1531-32. According, EWI is entitled to summary adjudication on the ground that Premier cannot show unjust enrichment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-354 JVS (ANx) | Date | December 23, 2009 |
| Title | Premier Displays & Exhibits v. David Cogswell, et al. | | |

IV. **CONCLUSION**

For the foregoing reasons, EWI's motion is GRANTED.

IT IS SO ORDERED.

                                                                    00   :   00

Initials of Preparer   kjt